UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

JEANETTE McMAHON, et al.,       )
                                )
       Plaintiffs,              )
                                )
v.                              )   Civil Action No. 6:05-cv-01002-JA-GJK
                                )
PRESIDENTIAL AIRWAYS, INC., et al., )
                                )
       Defendants.              )

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA IN
SUPPORT OF PLAINTIFFS' MOTION TO STRIKE
RETIRED GENERAL CHARLES HORNER AS AN EXPERT WITNESS**

**INTRODUCTION**

Pursuant to 28 U.S.C. § 517,[1] the United States of America respectfully submits this statement on behalf of the Department of Air Force ("USAF") in support of plaintiffs' motion to strike Retired General Charles A. Horner as an expert witness for defendants.[2] As explained in plaintiffs' motion, defendants have not sought permission for such testimony as required by Department of Defense's ("DoD") *Touhy* regulations, 32 C.F.R. Part 97. Nor has the USAF authorized General Horner to provide such testimony. Indeed, the USAF has sent General Horner two letters explaining that he is not authorized to provide such testimony under the

---

[1] Section 517 provides that "the Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

[2] See Plaintiffs' Motion to Strike Defense Expert Witness or, in the Alternative, for Leave to Depose Witness after the Discovery Deadline ("Pl. Motion") (Dkt. No. 242)

regulations.[3] Defendants have filed an opposition to plaintiffs' motion. In their opposition, they argue (1) that USAF's letter to General Horner stating that he is "not authorized" is not equivalent to a request or an order requiring defense counsel to withdraw him as an expert and (2) that the USAF's regulations do not apply to his testimony.[4]

The United States files this statement to address defendants' arguments. First, as explained below, compliance with the *Touhy* regulations is not, as defendants suggest, discretionary. Where, as here, defendants have not requested or received permission for USAF personnel to testify, such testimony may not be permitted. See, e.g., United States v. Bizzard, 674 F.2d 1382, 1387 (11th Cir.), cert. denied, 459 U.S. 973 (1982); Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 603 (5th Cir. 1966); United States v. Vander Luitgaren, No. 6:07-cr-211-Orl-22DAB, 2008 WL 2610465 (M.D. Fl. June 30, 2008).

Second, defendants' contention that the regulations do not cover General Horner's proposed testimony has no merit. On their face, the applicable *Touhy* regulations state that "DoD personnel" (which is defined to include retired military personnel) "shall not provide, with or without compensation, opinion or expert testimony concerning official DoD information, subjects or activities except on behalf of the United States or a party represented by the Department of Justice." 32 C.F.R. §§ 97.6(b),(e). Defendants have listed General Horner as their expert witness on "military operations." To the extent he has knowledge regarding "military operations," it is based on information which he acquired as part of his official duties as

---

[3] See Exhibits 2 and 5 to Pl. Motion.

[4] See Defendants' Opposition to Plaintiffs' Motion to Strike Defense Expert Witness ("Def. Opp.") (Dkt. No. 246), at 5-9.

a USAF officer. Any such testimony, therefore, falls squarely within the scope of the regulations. Accordingly, this Court should not allow General Horner to testify as an expert witness.

## BACKGROUND

### A.   Statutory and Regulatory Background

The Department of Defense ("DoD"), like many other federal agencies, has promulgated, pursuant to 5 U.S.C. § 301, the "Housekeeping Statute," so-called *Touhy* regulations which govern their employees' ability to respond to third-party subpoenas and to provide testimony. See 32 C.F.R. §§ 97.1-97.6.[5] These regulations cover requests to DoD for "release of official DoD information or for the appearance and testimony of DoD personnel as witnesses" in cases in which DoD or the United States is not a party. 32 C.F.R. §§ 97.3(a). "Official information" is defined as:

> [a]ll information of any kind, however stored, that is in the custody of the Department of Defense, relates to information in the custody of the Department, or was acquired by DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the U.S. Armed Forces.

32 C.F.R. § 97.3(d). "DoD personnel" is defined to include "present and former U.S. military

---

[5] The validity of such regulations was considered and upheld by the Supreme Court in United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). Touhy involved an FBI agent held in contempt because, pursuant to a Department of Justice regulation, he refused to produce certain documents subpoenaed by a state prisoner in a federal habeas corpus proceeding. The Supreme Court affirmed the reversal of the contempt order, concluding that the FBI agent's refusal to produce documents in contravention of the DOJ regulation was lawful, and that the regulation centralizing decisionmaking was a valid exercise of executive authority under the predecessor of the current Housekeeping statute, 5 U.S.C. § 301. Thus, such regulations became known as *Touhy* regulations.

personnel." 32 C.F.R. § 97.3(b).

Under these regulations, a party seeking such testimony must "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." 32 C.F.R. § 97.6(c)(2).[6] DoD personnel "may only produce, disclose, release, comment upon or testify concerning those matters that were specified in writing and properly approved by the appropriate DoD official." Id.

In addition, the regulations provide that "DoD personnel shall not provide, with or without compensation, opinion or expert testimony concerning official DoD information, subjects or activities, except on behalf of the United States or a party represented by the Department of Justice. 32 C.F.R. § 97.6(e).[7]

The DoD regulations are applicable to the USAF. 32 C.F.R. § 97.2(a). The USAF has

---

[6] In determining whether to comply with the request, DoD takes into account, among any other pertinent considerations: (1) whether such compliance would be "unduly burdensome or otherwise inappropriate under the applicable rules" of discovery; (2) "whether the disclosure, including release *in camera*, is appropriate under the rules of procedure governing the case or matter in which the request or demand arose;" (3) "whether the disclosure would violate a statute, executive order, regulation, or directive;" (4) "whether the disclosure, including release *in camera*, is appropriate or necessary under the relevant substantive law concerning privilege;" (5) "whether the disclosure, except when *in camera* and necessary to assert a claim of privilege, would reveal information properly classified . . . or other matters exempt from unrestricted disclosure;" and (6) "whether disclosure would interfere with ongoing enforcement proceedings, compromise constitutional rights, reveal the identity of an intelligence source or confidential informant, disclose trade secrets or similarly confidential commercial or financial information, or otherwise be inappropriate under the circumstances." 32 C.F.R. § 97.6(b).

[7] "Upon a showing by the requestor of exceptional need or unique circumstances and that the anticipated testimony will not be adverse to the interests of the Department of Defense or United States," an appropriate DoD official, however, "may, in writing, grant special authorization for DoD personnel to appear and testify at no expense to the United States." 32 C.F.R. § 97.6(e).

4

issued instructions providing additional guidance to its personnel regarding the *Touhy* regulations. See U.S. Exhibit 1 (Air Force Instruction 51-301, Chapter 9). Under those guidelines, "Air Force personnel may produce, disclose, release, comment upon, or testify concerning only those matters that the requester specifies in writing, and which the Air Force specifically approves." Id. ¶ 9.15. "Former and retired Air Force personnel who have possession of or access to official Air Force information, including classified information, are also required to follow the procedures in this section to obtain permission from the Air Force to release such information." Id. ¶ 9.4 Air Force Instruction 51-301 further states that "Air Force personnel do not provide opinion or expert testimony concerning official Air Force or DoD information, subjects or activities, except on behalf of the United States or for a party that DoJ represents." Id. ¶ 9.20. As the instruction explains, "[t]he Air Force must maintain strict impartiality in private litigation," and providing opinion and expert testimony "can easily create the impression that the Air Force favors a particular finding, even though it has no official interest in the outcome of the litigation." Id. ¶ 9.20.3.

**B.      Factual Background**

This litigation arises out of an airplane crash in 2004 in Afghanistan. The plane was operated by Presidential Airways, Inc. ("Presidential"), pursuant to a contract with the USAF for airlift services for combat troops and munitions. On May 29, 2009, defendants listed General Horner as an expert witness for "military operations" on its Rule 26(a)(2) Expert Witness Disclosure Statement. See Exhibit 1 to Pl. Motion. General Horner retired from the USAF in 1994. See Exhibit A to Def. Opp. His last position was the Commander in Chief of the North American Aerospace Defense Command and U.S. Space Command and the Commander of the

Air Force Space Command at Patterson Air Force Base in Colorado. Id. Prior to that position, he was the Commander of the U.S. Central Command Air Forces, at Shaw Air Force Base, South Carolina. Id. In that position, he had oversight and supervision of the U.S. and Allied air operations for Desert Shield and Desert Storm in Saudi Arabia.

Defendants failed to file a request with the USAF seeking permission to have General Horner testify as an expert witness in this case.[8] When the USAF learned that defendants had listed General Horner as an expert witness, it promptly sent him a letter explaining that he had not been authorized to provide expert or opinion testimony in this case. See Exhibit C to Pl. Motion (letter to General Horner from E. Glenn Parr, Chief, Aviation and Admiralty Law Branch, Claims and Tort Litigation Division, dated June 2, 2009). On the same day, Mr. Parr sent an email to counsel for plaintiffs and defendants attaching a copy of the letter. Exhibit B to Def. Opp. In his email, Mr. Parr stated "General (Ret.) Horner has not been authorized, and is not authorized, to provide expert opinion testimony of any kind in this case." Id.

On June 10, 2009, General Horner sent a letter to Lieutenant General Jack Rives, Judge Advocate General, USAF, stating that he did not believe that the *Touhy* regulations applied to him because he was retired and the regulations only prohibit him from testifying about matters in which he had a "direct involvement" while employed by the Government or serving on active duty. See Exhibit 4 to Pl. Motion.

On June 30, 2009, Major General Charles J. Dunlap, Jr., Deputy Judge Advocate General,

---

[8] Defendants are familiar with DOD's *Touhy* regulations. They filed *Touhy* requests for deposition testimony of Retired Lieutenant General Walter E. Buchanan III and Retired Master Sergeant David Benson in this case. In those letters, defendants explained that they sought only factual testimony and would not seek expert or opinion testimony. Based on that limitation, the Air Force approved the requests.

sent a reply to General Horner. See Tab E. In his letter, he explained that paragraph 9.2.1 of Air Force Instruction 51-301 "defines 'Air Force personnel' for purposes of that instruction to explicitly include 'retired US Air Force military personnel.'" Id. Major General Dunlap concluded, therefore, that General Horner's proposed testimony fell within paragraph 9.20.1, which states that "Air Force personnel do not provide opinion or expert testimony concerning official Air Force or DoD information, subjects, or activities, except on behalf of the United States or for a party that DoJ represents." Id. (quoting Air Force Instruction 51-301). Accordingly, he advised General Horner "that the Air Force is not authorizing [him] to provide expert or opinion testimony in the *McMahon* case." Id. Copies of the response were sent to counsel for plaintiffs and defendants.

On July 24, 2009, plaintiffs filed their motion to strike General Horner as an expert witness. Dkt. No. 242. On August 7, 2009, defendants filed an opposition. Dkt. No. 246. In their opposition, defendants argued that plaintiffs' motion should be denied because (1) plaintiffs did not have standing to seek to enforce the *Touhy* regulations, (2) the Air Force had taken no judicial action to prevent General Horner from testifying and, (3) the *Touhy* regulations do not prohibit General Horner's testimony.

## ARGUMENT

It is well established that agencies have the authority to restrict testimony of current and former employees regarding information acquired as a result of their official duties. As the Supreme Court explained, "[w]hen one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces*

*tecum* will be willingly obeyed or challenged is obvious." United States *ex rel.* Touhy v. Ragen, 340 U.S. at 468; accord Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 602-04 (5th Cir. 1966). This requirement helps ensure that the availability of employees to testify in litigation not involving federal parties is governed by the Department's policy to maintain strict impartiality with respect to private litigants and to minimize the disruption of official duties. See Moore v. Armour Pharm. Co., 927 F.2d 1195, 1197 (11th Cir. 1991); Davis v. U.S. Environmental Protection Agency, 877 F.2d 1181, 1186 (3d Cir. 1989); Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989).

Based on these concerns, courts have not allowed parties to seek testimony from current or former agency employees where, as here, a party failed to comply with the *Touhy* procedures. See, e.g., United States v. Bizzard, 674 F.2d 1382, 1387 (11th Cir.), cert. denied, 459 U.S. 973 (1982); Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 603 (5th Cir. 1966); United States v. Vander Luitgaren, No. 6:07-cr-211-Orl-22DAB, 2008 WL 2610465 (M.D. Fl. June 30, 2008); United States ex rel. Walker v. R & F Properties of Lake County, Inc., No. 5:02-cv-131-Oc-10GRJ, 2008 U.S. Dist. Lexis 26442 (M.D. Fl. April 2, 2008); Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp., No. 05-80183, 2006 WL 1523234 (S.D. Fl. April 24, 2006);

In this case, defendants have not sought nor have they received permission for General Horner to testify as an expert in this case. Indeed, the Department of Air Force has specifically instructed General Horner that he has not been authorized to testify as an expert in this case. See Exhibits 2 and 5 to Pl. Motion. Accordingly, this Court should not allow General Horner to testify as an expert witness. As explained below, none of the arguments presented by defendants

demonstrate otherwise.

### A. USAF Letters to General Horner Cannot Be Read As Providing Him the Option of Choosing to Testify as an Expert Witness in This Case.

In their opposition, defendants suggest that USAF's letters to General Horner are somehow not sufficient. Specifically, they argue that "[s]imply stating that General Horner is 'not authorized' under the regulations to testify is not equivalent to a request or order requiring defense counsel to withdraw him as an expert." Def. Opp. at 6. Defendants' attempt to read the letters as something less than a command that he not testify is simply wishful thinking on their part. Nothing in the letters suggest that compliance with the *Touhy* regulations is optional with either the witness or the requester.

Defendants base their argument on statements made by the USAF counsel at the deposition of General Buchanan. Defendants' reliance on the statements made by the USAF counsel at that deposition, however, is misplaced and taken out of context. With respect to General Buchanan, defendants had filed a request for his deposition pursuant to the *Touhy* regulations. In their request, they stated that "[t]he purpose of the deposition is to inquire as to factual matters involved in the November 27, 2004 crash . . . ." See U.S. Exhibit 2 (Letter to E. Glenn Parr from Mark Dombroff, dated April 7, 2009). In the letter, defendants' counsel specifically stated that they "understand and agree that [General Buchanan] will not offer any expert or opinion testimony." Based on that representation, the USAF approved the request. During the deposition, an issue arose as to whether a specific question asked by plaintiff's counsel sought to elicit opinion testimony. See Exhibit C, at 86-87 to Def. Opp. To avoid unnecessary litigation over this particular question in the course of that deposition, the USAF

counsel did not instruct General Buchanan not to answer. Instead, the USAF counsel allowed the General to respond, but clarified that any opinions expressed would be his personal opinions. The statements made by the USAF counsel were not intended to suggest that compliance with the *Touhy* regulations was a matter of discretion, and that former or current USAF personnel had the option of providing expert testimony without seeking permission from the USAF. Instead, the statements simply acknowledged that the question, in the course of a fact witness deposition, could be viewed as calling for opinion testimony. Indeed, defendants' counsel himself recognized this point. Immediately after the USAF counsel made his statements permitting opinion testimony, defendants' counsel stated: "General, if I could just interject. I gather based on that statement by the Air Force's lawyer, you would prefer not to answer that question." Id. at 88. General Buchanan responded by acknowledging that his answer "walk[ed] a fine line." Id.

In any case, to the extent that defendants believe that there was any ambiguity in USFA's letters, the filing of this statement of interest should remove any doubt. Nor is it necessary for the USAF to issue an order to defense counsel to withdraw General Horner as an expert witness. The DoD *Touhy* regulations apply to General Horner, not to defense counsel. An instruction to General Horner from the USAF stating that he is not authorized to provide expert testimony is therefore all that is required.

**B.     General Horner's Proposed Testimony is Covered by the Regulations.**

Defendants' contention that the General Horner's proposed testimony is not covered by the *Touhy* regulations is also incorrect. On their face, the regulations state that "DoD personnel shall not provide, with or without compensation, opinion or expert testimony concerning official DoD information, subjects or activities, except on behalf of the United States or a party

represented by the Department of Justice." 32 C.F.R. § 97.6(e). See also Air Force Instruction 51-301, paragraph 9.20 ("Air Force personnel do not provide opinion or expert testimony concerning Air Force or DoD information, subjects or activities, except on behalf of the United States or for a party that DoJ represents."). Moreover, the regulations specifically define "DoD personnel" to include "present and former U.S. military personnel." 32 C.F.R. § 97.3(b). The only exception to this prohibition on opinion or expert testimony by former military personnel, such as General Horner, is where the requestor shows "exceptional need or unique circumstances" -- and even then there must be a request that has been approved by the appropriate DoD official. 32 C.F.R. § 97.6(e).

Defendants argue that this prohibition against expert testimony by former DoD personnel does not apply here because General Horner had no direct involvement in the accident at issue in this case. As support for their position, they cite to paragraph 9.21 of Air Force Instruction 51-301, which states:

> Former Air Force personnel may not provide expert or opinion testimony about any matter in which they had a direct involvement while employed by the government or serving on active duty, unless they first obtain special authorization via the procedures outlined in 9.20.

Air Force Instruction 51-301, paragraph 9.21 (U.S. Exhibit 1). Defendants contend that this explicit prohibition against expert testimony by former personnel on matters "in which they had a direct involvement" means that former USAF personnel can provide expert testimony on matters in which they did not have a direct involvement. In short, defendants have interpreted this provision as creating an implicit exception to the general prohibition in paragraph 9.20.1 against expert testimony by current and former USAF personnel in private litigation. Based on this

11

interpretation, defendants argue that they do not need the "Air Force's permission and/or authorization to retain General Horner as an expert in this matter because he had no direct involvement in the events underlying this litigation as he was not a member of the Air Force at the relevant time." Def. Opp. at 9.

Defendants' reliance on this provision is misplaced. This provision is a specific limitation on providing expert or opinion testimony in cases covered by paragraph 9.20.1., i.e., "on behalf of the United States or for a party that DoJ represents." This limitation on testimony in Government cases is designed to make sure that other agencies, including DoJ, do not recruit former USAF personnel to testify in litigation without the USAF's knowledge.[9] In other words, USAF Instruction 51-301 permits no testimony, ever, in private litigation (except for extremely limited, unique circumstances set out in paragraph 9.20.1.1), and, based on the further limitation created by paragraph 9.21, witnesses may not testify as an expert for the U.S. or a DoJ represented party about matters in which they had a direct involvement while in Government service without first obtaining special authorization.

Defendants' interpretation of this provision cannot be reconciled with the DoD regulations, which clearly prohibits expert testimony by both current and former personnel. 32 C.F.R. § 97.6(e). The only exception created by DoD regulations is where a DoD official has approved a request for such testimony "upon a showing by the requestor of exceptional need or unique circumstances." Id. The USAF, as a component of the DoD, is required to follow the

---

[9] While the USAF will be expected to have notice if one of its current employees has been selected as a witness, it may not otherwise receive notice regarding a former employee or officer. The USAF believes that such notice is important because it may think another witness can do the job better, or because it may be investigating the other agency's choice for some sort of policy violation or even criminal offense.

DoD regulations and has no authority to allow testimony prohibited by DoD regulations. 32 C.F.R. § 97.2(a).[10]

In any case, even if defendants' interpretation were correct, General Horner's testimony would not be permitted. While defendants are correct that General Horner had no direct involvement in the events surrounding the plane crash, they have listed him as their expert on "military operations." In his report, General Horner provides his opinions, *inter alia*, that (1) the flight was a military, combat mission, (2) the search and rescue operations were hampered and delayed, and (3) the investigation by the USAF Collateral Investigation Board was not reliable. See U.S. Exhibit 3. It is clear from the report that General Horner bases his opinions on knowledge, which "was acquired by [him] as part of [his] official duties or because of [his] official status" while he served in the United States Air Force. See 32 C.F.R. § 97.3(d) (definition of "official information"). For example, he concludes that all flight missions, whether government or government contractor, "employ special tactics suited only for combat, such as low level flight or to vary flight routes in order to preclude becoming predictable and thus

---

[10] Even if defendants' interpretation of this instruction were a permissible reading of paragraph 9.21, the USAF's interpretation should prevail. It is well established that courts "must give substantial deference to an agency's interpretation of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). As stated by the Supreme Court:

> [the reviewing court] is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

Id. at 512 (citations and internal quotations omitted).

vulnerable to hostile actions and ground fire." U.S. Exhibit 3. He also relies upon his knowledge of the conditions in Afghanistan and military procedures in his discussion of the search and rescue mission. For example, he states:

> The CENTCOM Search and Rescue Center, co-located with CFACC Air Operations Center in Qatar, is responsible for all search and rescue operations in Afghanistan. While communications are good, it is difficult to have the same perceptions and sense of urgency that exists in Afghanistan such as at the Rescue Coordination Center (RCC) at Bagram. As a result, search and rescue operations were not well coordinated or effectively executed.

Id at 4. Thus, the fact that General Horner did not have any direct involvement in the events surrounding the accident is irrelevant. The expert testimony which defendants seek relates to his knowledge of military operations based on his service in the United States Air Force. Therefore, the *Touhy* regulations cover the testimony sought by defendants in this case.[11]

---

[11] The cases cited by defendants provide no support for their position that a former employee is only barred from providing expert testimony in cases involving events which occurred during his employment. Indeed, Boca Raton Community Hospital, 2006 WL 1523234, at *1, holds just the opposite. In that case, the court required the plaintiff to comply with the *Touhy* regulations where the testimony at issue in that case pertained "to matters which occurred, or information he acquired, while employed in his official capacity with HHS." Id. (emphasis added). The footnote in United States v. Rosen, 520 F. Supp. 2d 802, 809 n.12 (E.D. Va. 2007), simply states that "[t]he parties concede that the *Touhy* regulations apply to both current officials and to former officials called to testify about actions and events that took place while they were employed by the government." Nothing in the case suggests that *Touhy* regulations permit a former employee to testify as expert witness based on information acquired during his employment. United States ex rel. Roby v. Boeing Company, 189 F.R.D. 512 (S.D. Ohio 1999), is distinguishable because the United States was a party to the case. The court held that "fundamental fairness dictates that the *Touhy* regulations should not apply where the Government is a party to the litigation." Id. at 517.

## CONCLUSION

Plaintiffs' motion to strike General Horner as an expert witness for the defendants should be granted.

          Respectfully submitted,

          TONY WEST
          Assistant Attorney General

          A. BRIAN ABRITTON
          United States Attorney

          ARTHUR R. GOLDBERG
          Assistant Director

          <u>s/ Marcia K. Sowles</u>
          MARCIA K. SOWLES
          D.C. Bar # 369455
          Senior Counsel
          United States Department of Justice
          Civil Division, Federal Programs Branch
          20 Massachusetts Ave., N.W., Room 7114
          Washington, D.C. 20530
          Tel: (202) 514-4960
          Fax: (202) 616-8470

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been submitted for docketing and filing electronically through the CM/ECF of the U.S. District Court for the Middle District of Florida and copy has been served electronically to all Counsel of Record who are CM/ECF users in this case, on the 14th day of October 2009.

s/Marcia K. Sowles