UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEANETTE McMAHON, as Personal
Representative of the Estate of Michael
McMahon; TRACY GROGAN, as
Personal Representative of the Estate of
Travis Grogan; and SARAH MILLER, as
Personal Representative of the Estate of
Harley Miller,

    Plaintiffs,

-vs-                                        Case No. 6:05-cv-1002-Orl-28GJK

PRESIDENTIAL AIRWAYS, INC.,
AVIATION WORLDWIDE SERVICES,
LLC, STI AVIATION, INC., AIR QUEST,
INC.,

    Defendants.

---

## ORDER

This cause is before the Court on Plaintiffs' "Motion to Strike Defense Expert Witness, or in the alternative, for Leave to Depose Witness after the Discovery Deadline" (Doc. 242). In their motion, Plaintiffs request that this Court enter an Order striking General Charles A. Horner ("Horner") from Defendants' expert witness disclosure list, striking Horner's expert report, and prohibiting him from testifying in this action because Defendants failed to comply with the provisions of 32 C.F.R. § 97.6 et seq., the Touhy[1] regulations. (Id. at 1). In the

---

[1] In United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), the Supreme Court upheld the authority of department heads to promulgate regulations restricting employee testimony in private litigation to which the United States is not a party.

alternative, Plaintiffs request that if the Court permits Horner to testify, they be granted leave to depose him after the close of discovery. (Id.). Defendants have filed a Response (Doc. 246), and the United States has filed a Statement of Interest (Doc. 299) supporting Plaintiffs' motion. The matter is ripe for adjudication, and the Court issues the following ruling thereon.

## I. Background

This litigation began after an airplane operated by Defendants pursuant to a contract with the U.S. Air Force ("USAF") for airlift services, including the transport of troops and munitions, crashed in Afghanistan in 2004. Three U.S. soldiers died in the crash. On May 29, 2009, Defendants submitted their Expert Witness Disclosure list pursuant to Federal Rule of Civil Procedure 26, in which Defendants disclosed Horner—who had retired from the USAF in 1994—as an expert on "military operations" and attached a report summarizing his opinions. (Ex. 1 to Doc. 242).

On June 2, 2009, E. Glenn Parr ("Parr"), Chief, Aviation and Admiralty Law Branch, Claims and Tort Litigation Division of the Headquarters of the Air Force Legal Operations Agency ("AFLOA"), sent Horner a letter informing Horner that Air Force Instruction ("AFI") 51-301, paragraph 9.20.1 states: "'Air Force personnel do not provide opinion or expert testimony concerning official Air Force or [Department of Defense] information, subjects, or activities, except on behalf of the United States or for a party that [the Department of Justice] represents'" and that "Air Force personnel" includes both present and retired Air Force personnel. (June 2, 2009 Letter, Ex. 2 to Doc. 242 (quoting AFI 51-301 § 9.20.1) (second alteration in original)). Parr specifically advised Horner, "[Y]ou are not authorized to provide

expert or opinion testimony, such as that contained in your report, in the referenced action."[2] (Id.).

On June 10, 2009, Horner sent a letter to Lieutenant General Jack L. Rives ("Rives")—the Judge Advocate General for the United States Air Force—informing Rives of Parr's letter and claiming that Parr "intentionally sought to improperly intimidate me by referencing inapplicable Air Force regulations." (Horner Letter, Ex. 4 to Doc. 242). Specifically, Horner contended that his ability to provide expert testimony is controlled by paragraph 9.21 of AFI 51-301, not paragraph 9.20 as referenced by Parr. (Id.). On June 30, 2009, the Deputy Judge Advocate General, Major General Charles J. Dunlap, Jr. ("Dunlap"), responded to Horner's letter on behalf of Rives. (June 30, 2009 Letter, Ex. 5 to Doc. 242). Dunlap affirmed Parr's application of AFI 51-301 and stated that "paragraph 9.21 of AFI 51-301. . . . speaks to persons who had 'direct involvement' in a particular matter. Accordingly, it would not be applicable to you because, as you point out, you did not have direct involvement in the matter on which you would provide expert or opinion testimony." (Id.). Dunlap then advised Horner that "the Air Force is not authorizing you to provide expert or opinion testimony in the *McMahon* case." (Id.). Despite the Air Force's denial of

---

[2]The June 2, 2009 letter made clear that the AFLOA was not accusing Horner of deliberately violating Air Force instructions. Instead, the letter states:
> We can only assume defendants and their counsel, who know Air Force policy prohibits your participation as an expert in their case, failed to advise you of that fact. We regret having to write this letter at all, especially considering it is almost identical to one we sent Lieutenant General Walter E. Buchanan (Ret.), with copies to counsel for both sides, a year ago when defendants attempted, unsuccessfully, to engage him as an expert witness.

(June 2, 2009 Letter, at 2; see also Buchanan Letter, Ex. 3 to Doc. 242).

authorization, Defendants have disclosed Horner as an expert witness. Accordingly, Plaintiffs have filed the instant motion.

## II. Discussion

Plaintiffs' motion requests that this Court strike Horner's testimony, claiming that "[t]he General's expert report violates Air Force Instructions and the Touhy regulations." (Doc. 242 at 3). Defendants contend that Plaintiffs' motion should be denied because the Touhy regulations are not applicable to Horner's testimony because he "will not be testifying about actions or events that took place while he was employed by the Air Force." (Doc. 246 at 8-9). Additionally, Defendants argue that pursuant to paragraph 9.21 of AFI 51-301, Defendants "did not need the Air Force's permission and/or authorization to retain General Horner as an expert in this matter because he had no direct involvement in the events underlying this litigation."[3] (Doc. 246 at 9).

The Federal Housekeeping Statute, 5 U.S.C. § 301, authorizes the heads of federal agencies to promulgate regulations establishing the conditions for the testimony of agency employees. 5 U.S.C. § 301. In United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), the Supreme Court upheld the authority of department heads to promulgate regulations restricting employee testimony in private litigation to which the United States is not a party, stating that "[a]n agency has a legitimate and tidy housekeeping objective in centralizing the

---

[3]Defendants also argue that Plaintiffs' motion should be denied because Plaintiffs have no standing to enforce the Air Force's Touhy regulations and because the Air Force has not requested that this Court prevent Horner's expert testimony. (Doc. 246 at 3). The Court, however, finds neither argument availing, as the United States has filed a Statement of Interest (Doc. 299) supporting Plaintiffs' motion to strike.

determinations of when to assert and when not to assert a privilege. That objective is fulfilled when permission is requested from the head of the agency or other proper party." Id. at 468-69.

Pursuant to § 301, the Department of Defense ("DoD") promulgated its Touhy regulations regarding the testimony of its employees, and these regulations are codified at 32 C.F.R. Part 97. Regarding expert or opinion testimony, the Code of Federal Regulations states that "DoD personnel shall not provide, with or without compensation, opinion or expert testimony concerning official DoD information, subjects, or activities, except on behalf of the United States or a party represented by the Department of Justice." 32 C.F.R. § 97.6(e). However, the appropriate DoD official may grant special authorization for requested DoD personnel to provide testimony after a "showing . . . of exceptional need or unique circumstances and that the anticipated testimony will not be adverse to the interests of the [DoD] or the United States." Id. When a litigant desires to have DoD personnel[4] testify as to "official DoD information,"[5] that litigant must submit a request setting forth "in writing and with as much specificity as possible, the nature and relevance of the official information

---

[4]"DoD personnel" is defined to include both present and former U.S. military personnel. 32 C.F.R. § 97.3(b).

[5]"Official DoD information" is defined as:
All information of any kind, however stored, that is in the custody and control of the Department of Defense, relates to information in the custody and control of the Department, or was acquired by DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the U.S. Armed Forces.
32 C.F.R. § 97.3(e).

sought." Id. § 97.6(c)(2). "DoD personnel may only produce, disclose, release, comment upon, or testify concerning those matters that were specified in writing and properly approved by the appropriate DoD official." Id.; see also Touhy, 340 U.S. at 469.

In addition to these regulations, the USAF has issued additional instructions providing guidance to its employees regarding the Touhy regulations. (See AFI 51-301, Ex. 1 to Doc. 299). Paragraph 9.2 of AFI 51-301 defines "Air Force personnel" to include both "[p]resent and retired US Air Force military personnel." (Id. ¶ 9.2.1). Paragraph 9.20 explicitly states that "Air Force personnel do not provide opinion or expert testimony concerning official Air Force or DoD information, subjects, or activities, except on behalf of the United States or for a party that the DoJ represents." (Id. ¶ 9.20.1). AFI 51-301 provides an exception similar to that provided in 32 C.F.R. 97.6(e), stating that "[u]nder unique circumstances . . . , special authorization for Air Force personnel to appear and testify as an expert witness in private litigation . . . may be granted." (Id. ¶ 9.20.1.1). "Requests for such special authorization *must* be coordinated . . . with the responsible [Air Force Legal Services Agency] civil litigation division." (Id. (emphasis added)).

Defendants first argue that because Horner is not testifying about "actions or events that took place while he was employed by the Air Force," the "concerns underlying the Air Force's Touhy regulations are not implicated" and they were therefore not required to follow the Touhy regulations. (Doc. 246 at 8-9). Defendants state that "Horner . . . has no official and/or confidential Air Force information relating to the crash [at issue] and will not be asked to testify regarding actions and events that took place while he was [on] active duty with the Air Force." (Id. at 9). Presumably, Defendants are asserting that the Touhy regulations do

not apply to Horner's testimony because it does not concern "official DoD information."

Defendants' argument is unavailing. "Official DoD information" includes "information of any kind . . . that . . . was acquired by DoD personnel as part of their official duties or because of their official status within the Department while such personnel were employed by or on behalf of the Department or on active duty with the U.S. Armed Forces." 32 C.F.R. § 97.3(e). A cursory review of Horner's report indicates that he based his opinions on information acquired during his service in the USAF. For example, Horner stated in his report that "[w]hen operating in [a war zone] environment, there is a requirement to employ special tactics suited only for combat, such as low level flight or to vary flight routes in order to preclude becoming predictable and thus vulnerable to hostile actions and ground fire." (Horner Report, Ex. 3 to Doc. 299). Additionally, Horner opined in his report that search and rescue efforts were "not well coordinated or effectively executed" and that "[c]ommand and control of search and rescue operations should have been delegated early on to elements on the scene such as one of the following: [Rescue Coordination Center] or the A-10s, C-130s or Army Ch-47/53s involved in the actual search." (Id.).

Defendants also contend that Paragraph 9.21 of AFI 51-301 permits Horner to testify without first receiving authorization from the Air Force because he had been retired for approximately ten years and had "no direct involvement in the events underlying this litigation." (Doc. 246 at 9). Paragraph 9.21, entitled "Expert or Opinion Testimony by Former Air Force Personnel," states that "Former Air Force personnel may not provide expert or opinion testimony about any matter in which they had a direct involvement while employed by the government or serving on active duty, unless they first obtain special

authorization via the procedures outlined in paragraph 9.20." Though it is unclear whether paragraph 9.21 applies to Horner at all,[6] the Court finds that Paragraph 9.21 does not create an implicit exception authorizing former Air Force personnel to give expert or opinion testimony in contradiction to the explicit restriction set forth in Paragraph 9.20.

Because Horner's report contains "official DoD information" and because Paragraph 9.21 of AFI 51-301 does not create an implicit exception to the requirement that Air Force personnel receive authorization prior to giving expert testimony, Defendants are required to comply with the procedures set forth in the Touhy regulations promulgated by the DoD and the USAF. Defendants failed to request permission for Horner to provide expert testimony, and as such, the "housekeeping" function underlying the Touhy regulations has not been satisfied. Horner's testimony may not be permitted until Defendants have requested and received the USAF's permission for his testimony or, alternatively, until Defendants have exhausted their administrative remedies under the Administrative Procedure Act, 5 U.S.C. § 551, for a denial of such a request. See United States v. Blizzard, 674 F.2d 1382, 1387 (11th Cir. 1982) (affirming quashing of a subpoena of former employee of Department of Justice when defendant was aware of regulations prohibiting the employee from testifying as to information acquired during the performance of official duties); see also Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 603 (5th Cir. 1966) (stating that district

---

[6] Paragraph 9.2.1 lists multiple examples of who is considered "Air Force personnel," including both "[p]resent and retired US Air Force military personnel" and "[f]ormer US Air Force military personnel." (AFI 51-301 ¶ 9.2.1). Paragraph 9.21 applies to "Former Air Force personnel," and it is not clear whether this includes retired US Air Force Military personnel in light of Paragraph 9.2.1 listing the "retired U.S. Air Force military personnel" and "[f]ormer U.S. military personnel" separately.

court should have granted a motion to quash for "failure to comply with the 'simple requirement' of seeking permission").

### III. Conclusion

Because Defendants failed to comply with the requirements set forth under 32 C.F.R. § 97.6(e) and Paragraph 9.20 of AFI 51-301, Plaintiffs' motion (Doc. 242) is **GRANTED**. General Horner's report is stricken and he is prohibited from testifying in this matter. Defendants' "Motion for Leave to File a Reply to the Statement of Interest of the United States of America in Support of Plaintiffs' Motion to Strike Retired General Charles Horner as an Expert Witness" (Doc. 306) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 5th day of November, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party